IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| THOMAS HODGES and CHERYL HODGES, Individually and as guardian of Thomas Hodges,<br><br>     Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA ROLLIN BEARSS, M.D., BENEFIS MEDICAL GROUP and JOHN DOES I-III,<br><br>     Defendants. | CV-19-46-GF-BMM<br><br>Order |

## INTRODUCTION

Plaintiffs Cheryl and Thomas Hodges (collectively "Hodges") move for Summary Judgment regarding the constitutionality of the medical malpractice damages cap codified at Mont. Code Ann. § 25-4-911. (Doc. 55). Defendant Rollin Bearss ("Dr. Bearss") moves for Summary Judgment on the basis that he is not individually liable for actions taken on behalf of his corporation, co-defendant Benefis Medical Group ("Benefis"). (Doc. 72). Defendants and Hodges have filed several Motions in Limine. (Docs. 79, 81).

**FACTUAL AND LEGAL BACKGROUND**

Plaintiff Thomas Hodges ("Tom") suffered a severe stroke in 2017 following a surgery performed by Defendant Dr. Rollin Bearss ("Dr. Bearss") to remove kidney stones. (Doc. 1 at 3). Hodges alleges that substandard medical care provided by Dr. Bearss and Tom's primary care physician, Melanie Hardy ("Dr. Hardy"), who performed Tom's pre-operative examination caused the stroke. *Id.* at 3–4. Hodges argues that the stroke was the result of Dr. Bearss and Dr. Hardy taking Tom off his daily aspirin in preparation for the surgery. *Id.*

Tom now requires around-the-clock care by his wife Cheryl Hodges. (Doc. 56 at 4). Tom's stroke-related injuries include spastic right side hemiplegia aphasia, inability to communicate verbally, cognitive deficits that inhibit learning, and chronic spasticity resulting in chronic pain. *Id.* Tom remains largely wheelchair bound and he and Cheryl had to relocate from their home in Ledger, Montana, to Kalispell to provide Tom with a handicap accessible house. *Id.*

Hodges brought this suit against Dr. Hardy, and her employer, the United States of America, on July 11, 2019. (Doc. 1). Hodges later joined Dr. Bearss and his employer, Benefis Medical Group ("Benefis"), as co-defendants. (Doc. 16). Hodges settled the claim against the United States of America. (Doc. 61).

## LEGAL STANDARDS

The Court shall grant summary judgment if the movant shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A motion in limine constitutes "a procedural mechanism to limit in advance testimony or evidence in a particular area." *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016). A motion in limine "reduces the likelihood that unduly prejudicial evidence will ever reach the jury." *Jackson v. Cty. Of San Bernardino*, 194 F. Supp. 3d 1004, 1008 (C.D. Cal. 2016) (*citing Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003). A district court possesses "wide discretion" in considering a motion in limine. *Frost*, 218 F. Supp. 3d at 1133.

## DISCUSSION

Hodges moves for summary judgment on the Tenth Cause of Action of their Amended Complaint which asks for a declaration that Montana Code Annotated § 25-4-911 ("the Cap") violates provisions of the Montana Constitution. (Doc. 55). Defendant Rollin Bearss moves for Summary Judgment on the basis that he is not individually liable for the actions alleged by Hodges in their Amended Complaint because he was acting in the course and scope of his employment at all pertinent times. (Doc. 72). The parties each also have several pending motions in limine. (Docs. 79, 81). This order will address (I) Hodges' Motion for Summary

3

Judgment; (II) Dr. Bearss's Motion for Summary Judgment; and (III) the parties' motions in limine.

## I. Hodges's Motion for Summary Judgment.

Hodges argues that the Cap, which limits noneconomic damages in medical malpractice cases to $250,000, violates multiple provisions of the Montana Constitution. (Doc. 56). Defendants object to this motion on the basis that it is not yet ripe for adjudication. (Doc. 62 at 10-11).

For a motion to be constitutionally ripe the facts alleged must show that substantial controversy exists between parties of sufficient immediacy and reality to warrant the issuance of a declaratory action. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A claim is not ripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all," the injury must be "certainly impending" to be ripe for adjudication. *See United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009); *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).

"In a malpractice claim or claims against one or more health care providers based on a single incident of malpractice, an award for past and future damages for noneconomic loss may not exceed $250,000" and this cap may not be disclosed to a jury. Mont. Code Ann. § 25-9-411. The following circumstances must exist to trigger application of the Cap: (1) a jury has found that the plaintiff suffered

injuries; (2) that the defendant has violated the standard of care; (3) that this violation was the cause of the plaintiff's injuries; (4) that among those injuries are noneconomic injuries; and (5) that the noneconomic damages exceed $250,000.

Hodges's motion for summary judgment is not yet ripe, because the Cap has yet been triggered. The parties have not yet gone to trial and so a jury has yet to make any findings regarding whether Hodges suffered any injuries or, if they did, what caused those injuries. A jury has not found whether Hodges has noneconomic damages in excess of $250,000. A "cascade of events" still must occur before Hodges's question must be answered, and so Hodges's injuries are not "certainly impending." *See Osborne v. Billings Clinic*, No. CV 14-126-BLG-SPW, 2015 WL 13466113, at *1 (D. Mont. Dec. 16, 2015). The motion is not yet ripe, and so the Court denies Hodges's motion without prejudice.

## II. Dr. Bearss's Motion for Summary Judgment.

Dr. Bearss argues that he cannot be individually liable for the acts set forth in the Hodges's Amended Complaint because he was acting on behalf of his employer, Benefis, at all times alleged in the Amended Complaint. (Doc. 72). The Court agrees.

"Generally, employees and agents of a corporation are shielded from personal liability for acts taken on behalf of the corporation." *Sherner v. Nat'l Loss Control Servs. Corp.*, 124 P.3d 150, 155 (Mont. 2005). This principle, generally

known as the corporate shield doctrine, renders an agent liable as a principal to third parties for acts undertaken in the course of employment only when (1) with the agent's consent, credit is given to the agent personally in a transaction; (2) when the agent enters into a written contract in the name of the principal without believing in good faith that the agent has authority to do so; or (3) when the agent's acts are wrongful in their nature. Mont. Code Ann. § 28-10-702.

Hodges argues that Mont. Code Ann. § 28-10-702 fails to shield Dr. Bearss because his treatment of Tom was wrongful in nature. (Doc. 84 at 3). An agent acts "wrongfully" when the agent's actions are contrary to the goals of the principal, for personal gain, or a result of the agent's personal disdain for the third party. *See Phillips v. Montana Ed. Ass'n*, 610 P.2d 154, 158 (1980). Hodges argues that Dr. Bearss's treatment of Tom worked "against the goals of the principal," because it allegedly fell below the applicable standard of care and Dr. Bearss failed to follow Benefis's Staff Rules and Regulations. (Doc. 84 at 5).

Hodges overstates the meaning of "wrongful act" by essentially conflating it with negligence. Montana's corporate shield statute serves to hold the principal responsible for the negligence of their agent when the agent acts in the course of employment. *See Crane Creek Ranch, Inc. v. Cresap*, 103 P.3d 535, 537 (Mont. 2004). An agent must commit some "independent" wrong to be held personally liable. *Id.* The "personal nature" of the agent's actions form the "narrow"

6

exception to § 28-10-702. *Sherner v. Nat'l Loss Control Servs. Corp.*, 124 P.3d 150, 155 (Mont. 2005).

Hodges acknowledges that Dr. Bearss acted in "the course and scope of his employment duties" while treating Tom Hodges. (Doc. 18 at 4). Even if Dr. Bearss departed from his employer's rules and the appropriate standard of care, he did so in the process of providing Tom Hodges with medical treatment, the job for which Benefis hired him. Nothing about his actions was personal. He did not act independently of his duty to his employer.

Dr. Bearss's actions differ from those of the real estate agent in *McCarty v. Lincoln Green*, the case on which Hodges relies in arguing that breaching the standard of care constitutes a "wrongful act" that would open the agent to personal liability. *See McCarty v. Lincoln Green, Inc.*, 620 P.2d 1221, 1225 (Mont. 1980). In *McCarty*, "*no* standard could be countenanced by the real estate brokers' profession" to justify the agent's actions in selling a buyer a property different from the one the buyer wanted. *Id.* (emphasis added). The agent in *McCarty* did not merely breach the standard of care, he acted in a manner completely contrary to his profession.

A difference exists between acting "on behalf" of an employer and doing so imperfectly and acting "contrary to" an employer's goals. Dr. Bearss acted at all pertinent times to treat his patient. Dr. Bearss may have been negligent in treating

his patient, but that does not mean he acted contrary to the goals of his employer. The corporate shield doctrine would have little purpose if agents' actions were considered wrongful every time they exposed their employer to liability.

### III. Parties' Motions in Limine.

Hodges and Defendants have filed several motions in limine asking the Court to exclude multiple items of evidence at trial. (Docs. 79, 81). The Court addresses (a) Hodges's unopposed motions in limine and (b) the parties' opposed motions in limine discussed at the hearing on December 8, 2021. (Doc. 89).

#### a. Unopposed Motions in Limine.

Defendants assented to several of Hodges's motions in limine, including exclusion of (1) collateral source payments to or on behalf of the Plaintiffs (Doc. 80 at 3–4); (2) the suggestion that any motion or resulting order filed prior to trial prevented or limited the opposing party from fully arguing their case (*Id.* at 4–5); (3) the suggestion that this matter went to trial because a party was unwilling to settle (*Id.* at 5); (4) treating physicians as expert witnesses (*Id.* at 11); (5) the suggestion that medical negligence claims are excessively brought or adversely impact the cost and availability of health care services (*Id.* at 11–12); (6) pretrial communications between counsel and witnesses (*Id.* at 12–13); (7) comments about Hodges's attorneys (*Id.* at 14–15); (8) the taxability of an award to Hodges

(*Id.* at 15–16); and (9) Hodges's ability to invest any potential award to earn additional income (*Id.* at 16).

The Court grants Hodges's motions to the extent that Defendants have assented to each of the above motions.

### b. Opposed Motions in Limine.

#### i. Content of the Motions in Limine.

Hodges seeks to exclude the following evidence: (1) Tom Hodges's pre-existing injuries or conditions (Doc. 80 at 4); (2) attribution of fault to co-defendant the United States of America (*Id.* at 5–9); (3) the potential impact of this litigation or an adverse verdict on Defendants (*Id.* at 9–10); (4) the suggestion that Hodges's experts have no right to offer testimony critical of Defendants' conduct because Hodges's experts were not present during Defendants' treatment of Tom Hodges (*Id.* at 10–11); (5) Hodges's opinions on what they believe Defendants did wrong (*Id.* at 12); (6) statements in prior pleadings (*Id.* at 13); (7) the alcohol addiction and past DEA license revocation of Hodges's expert witness, Judy Schmidt, MD (Doc. 80 at 13–14); (8) the suggestion or implication that Hodges was wrong for filing this lawsuit or that Hodges is litigious (*Id.* at 16–17); and (9) references to evidence that has not been admitted or defense counsel's improper commentary on properly admitted evidence. (Doc. 80 at 18).

Defendants seek to exclude the following evidence: (1) the argument that medical reference materials establish the standard of care (Doc. 82 at 6–7); (2) "Golden Rule" arguments that the jury should put themselves in Hodges's place (*Id.* at 7–8); (3) evidence or arguments concerning liability insurance (*Id.* at 8); (4) any evidence of alleged incidental or consequential litigation damages (*Id.* at 9); and (5) testimony of Hodges's expert witness, Dr. Judy Schmidt (*Id.* at 9–14).

### c. The Court's Rulings

The Court heard arguments on all opposed motions in limine at the hearing on December 8, 2021. (Doc. 89). The Court ruled from the bench on the parties' motions during the hearing and provided its reasoning at that time. The Court summarizes its decisions as follows:

1. <u>Thomas Hodges's pre-existing injury or condition</u>: The Court denies this motion without prejudice and Hodges may renew it at trial if necessary.

2. <u>Attribution of Fault to the United States</u>: The United States has not yet been dismissed as a party from this case. *See* (Doc. 91). The Court defers ruling on this motion until the parties have filed the stipulation for dismissal of the United States as a defendant.

3. <u>Impact of litigation or adverse verdict on Defendants</u>: The Court urges all parties to avoid impermissible arguments regarding the stress of litigation and Golden Rule arguments. The Court denies this motion without prejudice.

4. <u>Impugning Plaintiffs' experts because they were not present for treatment</u>: The Court denies this motion without prejudice and Hodges may renew it at trial if necessary.

5. <u>Hodges's opinions on what they believe Defendants did wrong</u>: The Court denies this motion without prejudice and Hodges may renew it at trial if necessary.

6. <u>Statements in prior pleadings</u>: This motion is denied without prejudice and may be renewed at trial if necessary.

7. <u>Dr. Judy Schmidt's alcohol addiction and DEA License Revocation</u>: The Court determines that further briefing is necessary in order to make an informed ruling. The Court previously ordered both parties to submit briefing of no more than 10 pages regarding Defendant's allegations against Dr. Schmidt by January 7, 2022. *See* (Doc. 89).

8. <u>Arguments that Hodges improperly brought this suit or that they are litigious</u>: Defendants have assented to this motion for the most part. (Doc. 88 at 8). Defendants argue, however, that this motion, as articulated in Hodges's briefing, would preclude Defendants from asking potential jury members whether they assume that because a lawsuit was filed the allegations are true or that a case has merit just because it is being tried. *Id.* at 9. The Court agrees that this a proper question for voir dire. The Court denies the motion.

9. <u>References to evidence not admitted and Defense counsels' personal opinion</u>: Defense counsel may present demonstratives. Defense counsel may also argue the evidence, provided they couch their conclusions in the proper language. The Court denies the motion without prejudice, but Hodges may renew it at trial if Hodges believes that Defense counsel improperly has presented their own opinions to the jury.

10. <u>Medical reference materials as establishing the standard of care</u>: Plaintiffs' experts may rely on medical reference materials in establishing the proper standard of care for the jury. Plaintiffs may not present medical reference materials as establishing the standard of care absent contextualization by an expert witness.

11. <u>Golden Rule Arguments</u>: The Court denies this motion without prejudice and Defendants may renew it at trial if necessary.

12. <u>Evidence or arguments regarding liability insurance</u>: The motion is denied. The Court will determine the propriety of any voir dire questions relating to medical malpractice insurance closer to trial.

13. <u>Testimony of Dr. Judy Schmidt</u>: Dr. Schmidt's testimony will be limited to causation, i.e., whether the elimination of Tom Hodges's anti-platelet medication tend days before surgery was a substantial factor in causing his stroke. Dr. Schmidt may not testify as to negligence or standards of care. The motion is denied, but

Defendants may renew their objection to Dr. Schmidt's testimony if at any point she oversteps the limitations above.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Plaintiffs Thomas and Cheryl Hodges's Motion for Summary Judgment (Doc. 55) is **DENIED**.

2. Defendant Rollin Bearss's Motion for Summary Judgment (Doc. 72) is **GRANTED**.

3. Plaintiffs' Motions in Limine (Doc. 79) are **GRANTED, IN PART,** and **DENIED, IN PART**.

4. Defendants' Motions in Limine (Doc. 81) are **GRANTED, IN PART,** and **DENIED, IN PART**.

Dated this 6th day of January, 2022.

Brian Morris, Chief District Judge
United States District Court